UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DINO N. THEODORE and ACCESS WITH SUCCESS, INC.,       Plaintiffs<br><br>v.<br><br>BANK OF AMERICA CORPORATION,       Defendant | )<br>)<br>)  CIVIL ACTION NO.: 10-<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

## INTRODUCTION

This action is brought by the plaintiffs to enforce the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12182(b)(2)(iv), against Bank of America Corporation, a/k/a Bank of America National Association, a/k/a Bank of America ("BOA"). Dino N. Theodore and Access with Success, Inc. ("AWS") allege that BOA has violated Title III of the ADA. Specifically, the plaintiffs allege that BOA, with respect to the automatic teller machines ("ATMs") and banking centers that it owns and operates, has failed to comply with ADA and access requirements for areas of new construction or alteration and has failed to remove architectural barriers to access to the extent that removal of such barriers is readily achievable, as that term is used in 42 U.S.C. § 12182(2)(A)(iv); 28 C.F.R. § 36.304. More than twenty years after the passage of the ADA, BOA continues to discriminate against individuals who use wheelchairs for mobility. BOA designs, constructs, and operates facilities that provide separate, segregated and unequal access and services to customers who use wheelchairs and prevent or restrict access to such ATMs and bank branches by individuals with disabilities. Such architectural barriers include, but are not limited to, parking spaces that are not in the appropriate

1

number, accessible locations, or accessible design, steps, curbs, ramps, and door thresholds that impede or prevent access by individuals with mobility impairments, including individuals who use wheelchairs.  The plaintiffs seek an Order in the form of a Consent Decree, which requires BOA to remove architectural barriers at the ATMs that it owns and operates.

## PARTIES

1.     The plaintiff, Dino N. Theodore, age 50, is paralyzed from the chest down and always requires the use of a manual wheelchair for ambulation.  He suffered an accidental gunshot wound to the T7 vertebrae in 1981.

2.     Mr. Theodore resides with his wife and two children at 1305 Methuen Street, Dracut, Massachusetts.  He is an attorney employed by the Department of Industrial Accidents.  He has been admitted to practice law in Massachusetts since 1993.

3.     Mr. Theodore is a qualified individual with disabilities within the meaning of all applicable statutes, including the ADA, and is disabled within the meaning of the ADA in that he is substantially limited in performing one or more major life activities, including but not limited to walking and standing.  Mr. Theodore always uses a wheelchair for mobility purposes.  He is able to drive a car equipped with hand controls.

4.     The plaintiff, AWS, is a non-profit corporation organized and existing under the laws of the Commonwealth of Massachusetts.  Its members are able-bodied individuals and qualified individuals with disabilities as defined by the ADA.  Scott M. Frotton, age 47, is a founding member of AWS.  Mr. Frotton has T7 paraplegia secondary to a spinal cord injury sustained in a construction site accident in 1998.  Scott Frotton's wife, Tammy Frotton, is also a founding member of AWS.  She is not disabled.  Mr. Frank Salafia, age 73, is a member of AWS.  He is hearing impaired and has a total loss of vision in one eye.  G. David Iverson is a member of

AWS. He is paraplegic due to a gunshot wound he sustained in 1987. He always uses a wheelchair for ambulation. Michelle A. Downer, age 64, is a member of AWS. She sustained ruptured lumbar discs in a car accident many years ago and the condition of her lumbar spine has deteriorated to the point where she can stand and walk for brief periods of time, but has not been able to walk normally for many years. She almost always uses a wheelchair for ambulation. Raymond J. Aziz, age 68, is a member of AWS. Mr. Aziz wears braces on both ankles and frequently walks with a cane. His condition is secondary to adult onset of diabetes. Robert Brearley, age 55, is a member of AWS. He is paraplegic due to an accident in 1980. He cannot walk and always uses a wheelchair for ambulation. Daniel Murphy, age 55, is a member of AWS. Mr. Murphy sustained a C-6 spinal cord injury in a water diving accident in 1974. He is quadriplegic. He always uses a wheelchair for ambulation. He drives a vehicle equipped with hand controls. Alex Malvers, age 60, is a member of AWS. He has cerebral palsy. He always uses a wheelchair for ambulation. His speech is affected by cerebral palsy.

5. The individually named plaintiff, Dino N. Theodore, is also a member and a director of AWS. There are other members of AWS. All of the above-named members of AWS, except for Tammy Frotton, are qualified individuals with disabilities within the meaning of the ADA and all other applicable federal and state statutes.

6. AWS is a civil rights group organized for charitable and educational purposes by individuals with disabilities to advocate for the integration into society of disabled persons and equal access to all services, activities, programs, resources and facilities available to non-disabled persons. Its members are predominantly, but not exclusively, individuals with various physical disabilities impairing mobility, speech, vision and hearing. One of the primary purposes of AWS is to assure that private places of public accommodation are accessible to, and usable by

persons with disabilities.

7.     The defendant, BOA, is a financial services company, the largest bank holding company in the United States, by assets, and the second largest bank by market capitalization; BOA **is incorporated in Delaware, is authorized to do business in Massachusetts** and has a principal place of business at 100 N. Tryon Street, Charlotte, NC  28255.

8.     The defendant, BOA, has one of the country's most extensive branch networks with more than 5,900 locations covering some 40 states from coast to coast. Its core services include consumer and small business banking, credit cards, and asset management.

9.     The defendant, BOA, owns and operates the ATM banking centers at:

    a.     525 Turnpike Street, North Andover, MA;

    b.     67 Winthrop Avenue, Lawrence, MA;

    c.      23 Main Street, Andover, MA;

    d.      154 Main Street, North Andover, MA;

    e.     38 East Main Street, Georgetown, MA;

    f.     191 Merrimac Street, Haverhill, MA;

    g.     501 Bridge Street, Lowell, MA;

    h.     Route 114 & Route 133, North Andover, MA;

    i.     786 River Street, Haverhill, MA;

    j.     231 Lincoln Avenue, Haverhill, MA;

    k.     Route 110, Merrimac, MA;

    l.     361 Elm Street, Salisbury, MA;

    m.     Route 110, Amesbury, MA;

    n.     1815 Middlesex Street, Lowell, MA;

      o.      429 Lowell Street, Andover, MA; and

      p.      365 Main Street, Worcester, MA.

10.    An information and belief, there are nearly 18,000 BOA ATMs in the United States.

11.    BOA's ATMs are part of a network of ATMs that can be used by account holders with other banks (such as Mr. Theodore) to make deposits, withdrawals, account transfers or to check account balances.

12.    BOA also owns and operates conventional branch offices or banking centers, including one patronized by Mr. Theodore at 501 Bridge Street, Lowell, MA.

13.    BOA's ATM banking centers and branch offices are places of public accommodation subject to the requirements of the Title III of the ADA.

14.    The defendant, BOA, is a private entity that owns and operates a public accommodation, specifically, a "bank," as defined in the Title III of the ADA, 42 U.S.C. § 12181(7)(E).

15.    The defendant, BOA, is an entity that affects commerce and that owns a public accommodation as defined in 42 U.S.C. § 12181(7)(A).

## SYNOPSIS OF A CAUSE OF ACTION UNDER THE ADA

16.    Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

17.    Congress found that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5).

5

18.     After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." S. Rep. No. 101-116, p. 20 (1989); H. R. Rep. No. 101-485, pt. 2, p. 50 (1990).

19.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

20.     In order to make a prima facie case under Title III of the ADA, a plaintiff must prove that (1) he has a disability, (2) defendants' facility is a place of public accommodation, (3) and he was denied full and equal treatment because of his disability.

21.     The ADA's public accommodations provisions also permit an individual to allege discrimination based on a reasonable belief that discrimination is about to occur.

22.     A plaintiff with a disability need not engage in the "futile gesture" of attempting to gain access to each and every feature of a facility or place of public accommodation where access barriers are known to exist and where the owner or operator does not intend to comply with the provisions of the ADA. 42 U.S.C. § 12188(a)(1).

23.     This case arises out of the defendant's unlawful practice of denying meaningful and equal access to the facilities, goods and services offered at BOA ATM banking centers and branch offices to persons with disabilities, such as the plaintiff, Dino N. Theodore.

**JURISDICTION AND VENUE**

24.     The Court has primary jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343 in that this action arises under the laws of the United States and the defendant is subject to personal jurisdiction.

25.     Venue is proper in this Court under 28 U.S.C. § 1391, the claim having arisen in the District of Massachusetts.

**FACTUAL BACKGROUND**

26.     On May 27, 2010, Mr. Theodore went to a BOA branch at 501 Bridge Street in Lowell, MA intending to cash a check.

27.     When Mr. Theodore arrived at the branch, he observed two designated disabled parking spots in a lot consisting of approximately fifty parking spaces.  Neither space was sufficiently wide or marked appropriately for use by persons in wheelchairs.  The parking spaces did not comply with the ADA Accessibility Guidelines at 28 C.F.R. Part 36.  The area was dangerously sloped and he had difficulty in attempting to exit his vehicle and access the ramp into the bank building.

28.     The ramp into the 501 Bridge Street office has an excessive slope, which, on information and belief, exceeds the maximum slope of a ramp of 1:12 as required by ADAAG 4.8.2.  Entry into the bank is difficult as the doors exceed the maximum amount of force for pushing or pulling open a door as required by ADAAG 4.13.11.  The transaction counters and the counters designated for writing out deposit slips and other forms are not accessible because they exceed the maximum height from the finish floor of 36 inches as required by ADAAG 7.2.  The night deposit door is out of reach.  Mr. Theodore is unaware whether accessible restrooms are made available to the public.

29.     As described herein, the defendant's Bridge Street branch office does not comply with the 1990 Americans with Disabilities Act.

30.     On May 27, 2010, Mr. Theodore was denied meaningful and equal access to the facilities, goods and services of the defendant's Bank due to its lack of accessibility and a lack of compliance with the ADA's requirements regarding access aisles, accessibility, accessible routes, ramps, and doors.

31.     Mr. Theodore is also the holder of an ATM card that can be used to conduct banking transactions within the BOA network of ATMs.

32.     On or about July 5, 2010, Mr. Theodore attempted to gain access to the BOA ATM at 429 Lowell Street, Andover, MA.

33.     He could see that he could not safely traverse the threshold and entry to the ATM kiosk. He chose not to engage in the futile gesture of going inside.

34.     Mr. Theodore used and wishes in the future to use BOA ATMs.

35.     Many BOA branches and ATM banking centers do not comply with the 1990 Americans with Disabilities Act.  The following branches and ATM banking centers, for example, are known to the plaintiffs not to be wheelchair accessible:

    a.     **525 Turnpike Street, North Andover, MA**.  The door handle requires greater than 5 lbs of pressure, the maximum amount of force for pushing or pulling open a door as required by ADAAG 4.13.11.  The door handle does not have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate as required by ADAAG 4.13.9.  The ramp up onto the curb around the kiosk exceeds the maximum slope of a ramp of 1:12 as required by ADAAG 4.8.2.

      b.      **67 Winthrop Street, Lawrence, MA**.  The doors do not comply with ADAAG 4.13.  The door handle does not have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate as required by ADAAG 4.13.9.  There is no ramp in front of the door.  At least one accessible route is not provided within the boundary of the site from each accessible parking space, public transportation stops, and public streets or sidewalks to an accessible building entrance as required by ADAAG 4.3.2.

      c.      **23 Main Street, Andover, MA**.  There is no ramp for access to the upper level entrance.  There is a two brick step-up into the ATM kiosk.  At least one accessible route is not provided within the boundary of the site from each accessible parking space, public transportation stops, and public streets or sidewalks to an accessible building entrance as required by ADAAG 4.3.2.  The transactional counters have no section with a minimum 36 inches in length with a maximum of 36 inches above the finished floor as required by ADAAG 7.2.  There is no appropriate signage stating that the lower entrance is wheelchair accessible as required by ADAAG 4.30.7.  The lower level is not wheelchair accessible.  The lower level kiosk does not have accessible parking spaces located on the shortest accessible route of travel from adjacent parking to an accessible entrance as required by ADAAG 4.6.2.  On information and belief, curb ramp is of dimensions that do not comply with the maximum slope of a ramp of 1:12 as required by ADAAG 4.7.2.  The surface of the curb ramp is simply a rough asphalt pile.  The ground and floor surfaces along putative accessible routes are not stable, firm, and slip-resistant as required by ADAAG 4.5.1.

      d.      **154 Main Street, North Andover, MA**.  There is no accessible parking located on the shortest accessible route of travel from adjacent parking to an accessible entrance as required by ADAAG 4.6.2, even though there is a space that is marked with the international

symbol of accessibility.  There is no passenger-loading zone that has signage as required by 4.1 ADAAG.  The turning radius inside the ATM kiosk is absolutely impossible to navigate in a wheelchair.  The space required for a wheelchair to make a 180-degree turn is a clear space of 60 inch diameter or a T-shaped space as required by ADAAG 4.2.3.

      e.      **38 East Main Street, Georgetown, MA**.  There is a designated and marked accessible parking space, but the sign is not at the correct height.  There are no van accessible spaces serving this building.  The putative accessible parking is not located on the shortest accessible route of travel to an accessible entrance as required by ADAAG 4.6.2.  There are stairs going into both entrances; at least one accessible route is not provided within the boundary of the site from each accessible parking space, public transportation stops, and public streets or sidewalks to an accessible building entrance as required by ADAAG 4.3.2.

      f.      **191 Merrimac Street, Haverhill, MA**.  The ramp is of a slope that should require the installation of handrails because the ramp run has a rise greater than 6 inches or a horizontal projection greater than 72 inches.  ADAAG 4.8.5.  There are no accessible parking spaces serving this building.  The putative accessible parking is not located on the shortest accessible route of travel to an accessible entrance as required by ADAAG 4.6.2.

      g.      **Route 114 & 133, North Andover, MA**.  The ramp is excessively steep and has a slope greater than the maximum slope allowed of 1:12 as per ADAAG 4.8.2.  There is no accessible route within the boundary of the site provided from the accessible parking and accessible passenger loading zones to the accessible building entrance they serve as required by ADAAG 4.3.2.  On information and belief, this particular ATM is the subject of a complaint (by a person or persons other than the plaintiffs) submitted to the Commonwealth of Massachusetts Architectural Access Board.

h. **786 River Street, Haverhill, MA**.  The ramp surface has a crack.  It is unstable.  ADAAG 4.5.1.  The ramp does not conform to the requirements for curb ramps under ADAAG 4.7.  There is a counter inside that is too high for use by a person in a wheelchair and exceeds the maximum height from finish floor of 36 inches as required by ADAAG 7.2.  There are two doors in the kiosk.  There is a step-up to one door and the other one, the supposedly accessible one has a lip, which do not comply with the ADA standards for thresholds at a doorway as required by ADAAG 4.13.8.  Raised thresholds and floor level changes at accessible doorways shall be beveled with a slope no greater than 1:2 as required by ADAAG 4.13.8.  The sidewalk is of an insufficient width to allow a person to position himself in a wheelchair and open the door to get inside.  It lacks the minimum maneuvering clearance at a door as required by ADAAG 4.13.6 and fig 25 of the ADAAG.

i. **231 Lincoln Avenue, Haverhill, MA**.  The ramp is too steep for the sidewalk and does not comply with the maximum slope of a ramp of 1:12 as required by ADAAG 4.8.2.  There is insufficient turning radius to get up on the sidewalk and open the door.  The space required for a wheelchair to make a 180-degree turn is a clear space of 60-inch diameter or a T-shaped space as required by ADAAG 4.2.3.

j. **Route 110, Merrimac, MA**.  The accessible parking space is not of the proper dimensions.  The signage is improper; the accessible parking spaces are not designated as reserved by a sign showing the symbol of accessibility as required by ADAAG 4.6.4.  The transactional counter inside the kiosk exceeds the maximum counter height from finish floor of 36 inches as required by ADAAG 7.2.

k. **361 Elm Street, Salisbury, MA**.  There are no accessible parking spaces serving this building.  The putative accessible parking lot is not located on the shortest accessible route

of travel to an accessible entrance as required by ADAAG 4.6.2. There is no accessible route to the ATM as required by ADAAG 4.3.2 due to the lack of curb cuts connecting accessible elements and the entrance.

      l.      **Route 110, Amesbury, MA**. There is no entrance ramp. There is no lowered transactional counter. The counter exceeds the maximum height from the finish floor of 36 inches as required by ADAAG 7.2. There are no accessible parking spaces serving this building, the putative accessible parking is not located on the shortest accessible route of travel to an accessible entrance as required by ADAAG 4.6.2.

      m.      **1815 Middlesex Street, Lowell, MA**. There are no accessible parking spaces serving this building; the putative accessible parking is not located on the shortest accessible route of travel to an accessible entrance as required by ADAAG 4.6.2. There is no accessible route to the ATM as required by ADAAG 4.3.2 due to the lack of curb cuts connecting accessible elements and the entrance.

      n.      The Lowell Street, Andover ATM kiosk has a threshold at the entrance that precludes safe and convenient wheelchair access.

      o.      **365 Main Street, Worcester, MA**. There are stairs leading up from the sidewalk into the main lobby entrance. There are two additional entrances to the lobby on Foster Street, but once inside the entrance, one would have to climb six steps to enter the bank lobby. There is a BOA parking lot on Foster Street where free parking is offered for bank and ATM customers, but the lot lacks the requisite number of accessible spaces; there is no accessible path of travel from the BOA parking lot to the banking center.

36. On information and believe, other ADA violations exist at the ATMs identified above and at other, BOA ATMs and branch offices, which will be more fully alleged when the

plaintiffs have had an opportunity to conduct a full-fledged inspection of the defendant's facilities.

37.     Mr. Theodore wishes to patronize the defendant's BOA branches and ATM Banking Centers in the future, and reasonably expects that he will return because of the convenience of the services offered there and the numerous locations but he continues to be denied meaningful access to the BOA branches and ATM banking centers due to the lack of wheelchair access, accessible parking, accessible routes, accessible aisles, and doors that do not comply with ADA standards.

## COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

38.     The defendant has discriminated against the plaintiffs and continues to discriminate against the plaintiffs by denying then access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of BOA as prohibited by 42 U.S.C. § 12182(b)(2)(A)(iv) and by failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the bank's facilities are readily accessible as required by 42 U.S.C. § 12183(a)(2).

39.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated federal regulations to implement the requirements of the ADA.  The regulations are codified at 28 C.F.R. Part 36.  The regulations are known as the "ADAAGs" or the "Americans with Disabilities Act Accessibility Guidelines."

40.     With respect to altered facilities under the ADA, discrimination constitutes "a failure to make alterations in such manner that, to maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  42 U.S.C. § 12183(a)(2).

41. All alterations that could affect the usability of a facility must be made in an accessible manner to the maximum extent feasible.

42. Even if BOA branches and ATM banking centers never were altered facilities within the meaning of the ADA, owners or operators of a place of public accommodation, such as the defendant, are required to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities and the defendant has failed to meet this requirement.

43. 42 U.S.C. § 12182(2)(A)(iv) provides that "discrimination" under the ADA includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."

44. Under 42 USC § 12181(9) the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."

45. In determining whether an action is readily achievable, factors to be considered include:

"(A) the nature and cost of the action needed under this Act;

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity."

46. In this case, the financial resources to be considered would be those of the defendant, BOA

47.     28 CFR § 36.304 provides the following examples of readily achievable steps that a public accommodation should take to remove barriers:

(1)     Installing ramps;

(2)     Making curb cuts in sidewalks and entrances;

(3)     Repositioning telephones;

(4)     Widening doors;

(5)     Installing offset hinges to widen doorways;

(6)     Installing accessible door hardware;

(7)     Creating designated accessible parking spaces;

54.     Furthermore, 28 CFR § 36.304(c) provides:

"Priorities. A public accommodation is urged to take measures to comply with the barrier removal requirements of this section in accordance with the following order of priorities.

(1)     First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces.

(2)     Second, a public accommodation should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables, providing Brailled and raised character signage, widening doors, providing visual alarms, and installing ramps.

(3)     Third, a public accommodation should take measures to provide access to restroom facilities. These measures include, for example, removal of obstructing furniture or vending machines, widening of doors, installation of ramps, providing accessible signage, widening of toilet stalls, and installation of grab bars.

(4)     Fourth, a public accommodation should take any other measures necessary to provide access to the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation."

48.     During his visit to BOA branches and ATM banking centers, Mr. Theodore observed, encountered, and suffered discrimination as a result of architectural barriers to wheelchair access there.

49.     Mr. Theodore intends to return to the defendant's branches and ATM banking centers as soon as the architectural barriers to wheelchair access are removed, probably sooner.

50.     Mr. Theodore would like to patronize BOA branches and ATM banking centers, but he does not wish to engage in the futile gesture of doing so and of attempting to gain access to each and every feature of BOA branches and ATM banking centers because he reasonably expects that barriers to wheelchair access exist there and the defendant has not and does not intend to remove architectural barriers to access at any of its locations.

51.     Mr. Theodore and Access with Success, Inc. have suffered an injury in fact as a result of the defendant's non-compliance with the ADA.  Mr. Theodore lives within convenient traveling distance of the defendant's banking locations, particularly the 501 Bridge Street, Lowell, MA branch.  The proximity of his home to the 501 Bridge Street, Lowell, MA branch and his desire to use services offered there create a real and immediate threat of future injury.

52.     The injunctive relief requested below will redress Mr. Theodore's injury.

53.     The defendant has failed to remove barriers to access by persons with mobility impairments at the BOA branches and ATM banking centers where such barrier removal is readily achievable.

54.     BOA has failed to modify policies and procedures at its branches and ATM banking centers where required to ensure equal access for persons with disabilities.

55. The defendant has not made efforts required under the ADA to remove such barriers to the extent readily achievable nor has the defendant complied with accessibility standards to the maximum feasible.

56. The defendant has also, by maintaining such barriers, failed to comply with ADA and access requirements for areas of new construction or alteration.

57. The actions and initiatives that the defendant has failed to undertake in order to make BOA branches and ATM banking centers accessible to persons with disabilities are actions and initiatives that would be readily achievable, required by law, and would greatly assist persons with mobility disabilities at minimal expense to the defendant.

58. The defendant's conduct constitutes ongoing and continuous violations of the ADA and, unless restrained from doing so, the defendant will continue to violate the ADA. Said conduct, unless enjoined, will continue to inflict injuries for which the plaintiffs have no adequate remedy at law.

WHEREFORE, The plaintiffs request that the Court will order the defendant to alter BOA branches and ATM banking centers, to make them readily accessible to and useable by individuals with disabilities to the extent required by the Americans with Disabilities Act and Subpart E of 28 C.F.R. Part 36 and award the plaintiff appropriate attorneys' fees and costs of this suit as provided by 42 U.S.C. § 12205.

> Respectfully submitted,
> The Plaintiffs, DINO N. THEODORE, et al.,
>
> By their Attorneys,

/s/ Nicholas S. Guerrera
Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
(978) 689-0800